[No. 17732. Department Two. September 5, 1923.]

F. Z. HURD, *Respondent*, v. HENRY WYSONG *et al.,* *Appellants.*[1]

CONTRACTS (161, 179)—PERFORMANCE OR BREACH—EVIDENCE—SUF-FICIENCY. A contract to dig a well that would furnish a continuous flow of water through a two and one-half inch pump, working at maximum capacity, is shown to have been performed by tests which the court found to be the full capacity of the pump, considering the depth of the well, when not operated at an excessive speed not within the contemplation of the parties.

Appeal from a judgment of the superior court for Franklin county, Back, J., entered March 30, 1922, upon findings in favor of the plaintiff, in an action to foreclose a laborer's lien. Affirmed.

*Edward A. Davis,* for appellants.

*H. B. Noland,* for respondent.

PEMBERTON, J.—This is an action by respondent against appellant for the foreclosure of a lien for the drilling of a well upon the farm of appellant in Franklin county, Washington. From a judgment entered in favor of the respondent, this appeal is taken.

[1]Reported in 218 Pac. 214.

Two questions are involved: What was the contract between appellants and respondent; and, has the contract been complied with on the part of respondent?

Appellants claim that respondent agreed to drill a well sufficient to furnish a continuous flow of water through a two and one-half inch pump working at its maximum capacity, and if he failed so to do, he should receive nothing for his labor.

The contentions of the parties are set forth in the opinion rendered in a former appeal of this case found in 109 Wash. 202, 186 Pac. 301.

At the time of the retrial, appellant made a written request that a commissioner be appointed to test the strength of the well and asked,

". . . . that such commissioner proceed to the well in question at the soonest convenient time, install a pump therein and operate the same for twenty-four hours continuously, pumping at the rate of eight and one-third gallons per minute of time, or five hundred gallons per hour of time. That if said well will supply the quantity of water necessary for the said test, that is, eight and one third gallons per minute or 500 gallons per hour for a period of twenty-four hours continuously, operating at any rate of speed whatsoever, then the plaintiff be deemed and decided to have fully complied with his contract."

The trial court appointed two commissioners. These commissioners proceeded to test the well under conditions insisted upon by respondent, at nineteen strokes per minute with a twenty inch stroke, and under the conditions contended for by appellants at thirty-three strokes per minute with a twenty-four inch stroke. The commissioners also tested the well under certain conditions proposed by the trial court at twenty strokes per minute with a twenty-four inch stroke for ten hours per day for five consecutive days. From

6:40 a. m., on April 11, to 6 p. m. April 18, the commissioners applied the Hurd test. This test was from about six in the morning to six in the evening each day. On April 18, they proceeded with the test directed by the court and so continued until April 21. On April 23, for two days both night and day, they continued to test the well according to the plan suggested by the Wysongs.

Under the test made, there was no indication of the exhaustion of the water in the well; except under the Wysong test there was an indication that the pump was drawing some air. However, at the end of the forty-eight hour run, the capacity of the pump was 5.59 gallons per minute; and during this test for the first twenty-four hours the pump threw an average of eight gallons per minute.

The principal controversy is over the manner of testing the well, whether or not, under the contract, the well must be such that it could not be exhausted by the use of a two and one-half inch pump with a speed of twenty strokes per minute with a twenty-four inch stroke, which the court found to be the full capacity of the pump, considering the depth of the well; or whether or not the pump should be operated at the rate of thirty-three strokes per minute with a twenty-four inch stroke, which would produce sixty-four feet of upward piston travel per minute of time. The capacity of the pump depends to a great extent upon the depth of the well; and at the time of the entering into the contract it was not anticipated that it would be necessary to drill a well eleven hundred feet deep. We are satisfied that the trial court properly found, under the evidence in this case, that the well in question produces a continuous and undiminished stream of water through a two and one-half inch pump running

at full capacity, and that the excessive speed of the pump insisted upon by the appellants was not within the contemplation of the parties at the time of the agreement for the construction of the well, and not a proper test.

The judgment of the trial court will be affirmed.

MAIN, C. J., FULLERTON, PARKER, and TOLMAN, JJ., concur.